All right, this is a large courtroom, so I'm going to ask people to speak up. And we will begin with Atkinson versus Godfrey. Mr. Castro. May it please the court, my name is Brian Castro. I represent the defendants' appellants in this case, Deputy Godfrey and Sheriff Coates of Harnett County. The main question before the court is whether the district court erred in declining to afford Deputy Godfrey qualified immunity based on the pleadings alleged in the complaint. As this court is aware, there is a two-pronged framework for qualified immunity illustrated in Saucier v. Katz. First, did Officer Godfrey violate the plaintiff's constitutional rights? Second, if he did so, were those constitutional rights clearly established? The court must answer both of these questions in the affirmative in order to uphold the decision of the district court, and it may address these questions in any order. The Supreme Court in the City of Tahlequah case in 2021 addressed only the clearly established prong, and it jumped straight to the clearly established prong. I think unless the court prefers otherwise, I will jump to the clearly established prong as my first point of analysis. As background, it is undisputed that this case arises out of Deputy Godfrey's involvement in the midst of an attempted repossession. The repossession had already begun when Deputy Godfrey arrived at the scene. The tow company at issue did not call for the deputy's assistance before arriving at the scene. There was no involvement, there was no knowledge of Deputy Godfrey of this repossession. He arrived... You were called by CR, weren't you? We were called by CR after the tow company attempted to hook the vehicle onto the tow truck. Right. Correct. I mean, I'm just wondering how that scenario differs from the normal breach of the peace situation where you have, let's say, a beer party in somebody's front yard, and it's really annoying the neighbors, and so the neighbors call for the police, and a policeman comes and asks that someone be quiet or that the party move to another place or whatever. That's not a constitutional violation to be answering a call in that way. I mean, police officers answer calls from 9-1-1 or whatever for all kinds of things, and you know, we're having enough trouble getting people to answer 9-1-1 calls, and if we start saying, well, there's going to be a constitutional violation going here, there, and everywhere, even if it's in response to a call, I mean, then we're really kind of down a... not a nice path, isn't that right? That's correct. When an officer is acting merely as a peace officer, which is the language some courts use in that scenario, where they are merely being called in response to a chaotic scene, such as the hypothetical that you posed, they are not acting as a mantle... they are not providing a private party with a mantle of authority to commit an unconstitutional act. To the contrary, they are acting as a peace officer responding to a scene. What do you think is... you just referred to the kind of what the circuits think. There does seem to be a kind of uniform rule that other circuits apply. What do you think the line is that other circuits are drawing to divide state action in this instance from a... you know, the seizure of state action versus just private action? There does not appear to be a bright line. However, there is a framework that is... the circuits, the surrounding circuits are starting to come up with, and it is referred to as a spectrum of police involvement, where it goes from de minimis to active participation in a repossession. This creates a hazy legal framework. So where the police affirmatively intervene to aid the repossessor seems to be where the line is. So responding to a breach of the peace, normal police conduct, they are not assisting in or affirmatively aiding the repossession, but the circuits seem to draw the line at affirmatively stepping in and causing the repossession in that way. Correct. The question is not necessarily whether, but for the officer's involvement, the repossession would have occurred. It's whether they affirmatively aided, as you stated, when, for example, if CR would have called Deputy Godfrey to the scene prior to the repossession, asked for his involvement at the scene, participation to hold off the plaintiff while the repossession occurred, began, and was completed, that would be an affirmative aid or act. So, counsel, your colleague is going to say that at least as alleged, which we're thinking about it in this context in 12B6, that the officer coming out when there's an impasse at the scene and saying you have to get out is, in effect, aiding and not just maintaining the peace. What's your response to that argument? My response to that argument is that a mere minimal aid in telling the plaintiff to exit the vehicle in the middle of a breach of the peace is not sufficient active involvement. It is too simplistic to state if the officer would not have arrived and said, get out of the car, then the possession would not have occurred. Courts view it differently. We don't have to adopt that but for causation, do we, to say on the pleadings here, she says the officer showed up and said get out of the car so he can take it. How does that not cross the line into aiding the repossession, if that's the line we're drawing? If that's the line you're drawing, it still does not rise to the level of aiding the repossession because courts have focused on the timing of the involvement, whether the tow company or the private party had already secured or attempted to secure possession of the vehicle, and the level of the officer's overall actions involved in the case. Here there was a mere order to exit the vehicle in the middle of a breach of the peace. Counsel, it may be a better argument that maybe it is, maybe it's not, but we can't tell exactly what's aiding and what's not in a way that clearly establishes this is a violation. It seems to me we could pick a case that might support your colleague's position. We could pick some that don't. But we have a general concept here, and to satisfy the clearly established, that's just an issue that is murky. That is the precise issue, and I think that is the deciding issue in this case, is that we are referring to cases from the 5th Circuit, 2nd Circuit, surrounding jurisdictions, many of which support the argument that there was not enough active involvement, some of which may have gone for a more simplistic approach where ordering the plaintiff out. The cases are kind of all over the place. They are all over the place, and there is no case in the 4th Circuit, Supreme Court, or the Eastern District of North Carolina that speaks to this issue. The District Court improperly applied the Qualified Immunity Analysis when it said, it cited the Fuentes case, a Supreme Court case from 1972, which was about replevin statutes in Florida and Pennsylvania, which allowed an officer to accompany a private party to a plaintiff's home. In one case, it was to retrieve a gas stove. In the other case, it was to... Well, that's not even a Fourth Amendment case, right? It's not even a Fourth Amendment case. It was about the constitutionality. It was about due process. It was about whether the replevin statute violated due process because it did not entitle those parties to a hearing prior to the repossession. That is not at all on point with these circumstances. Citing that case... Which case are you talking about now? That is a Fuentes case that the District Court and the plaintiffs cite. It's a U.S. 1972 case, Fuentes v. Shevin, U.S. 1972. This was cited by the District Court as one of the cases that support... What about Soledad? That's a little bit more on point. That's the Fourth Amendment state action seizure. Yes. And that fares no better because we must compare the specific facts at issue to the facts of this case. Ashcroft stated that the court stated in Ashcroft in 2011, written by the late Justice Scalia, that we must focus on the particular conduct at issue. Soledad, a Supreme Court case from 1992, which was the only other case cited by the District Court, was about a manager of a mobile home park who notified the sheriff before he began evictions from moving mobile homes to another location. He called the sheriff to the scene. The sheriff and the deputies arrived to the mobile home park. They make sure everything is kosher at the scene. They make sure the mobile home park manager is allowed to effectuate the eviction process. The requested... The mobile home park manager specifically requested the officers to, quote, forestall any resistance. This is clearly distinguishable from the case at issue. As the court has stated, we must avoid relying on generalities when we look at the clearly established problem. We cannot go away... Your whole point is that qualified immunity rests upon the whole idea of notice. And you simply... It's a due process concept. Due process, a state can deprive. It's an interesting thing because the due process clause can cut in both ways. On the one hand, the state can deprive individual citizens of due process. But then qualified immunity says, well, wait a minute, there's a due process notion on the other side, too, even though the private actor isn't a state actor, but the due process argument in the other side is that before you're hauled into court, you're entitled to notice that what you did was wrong. And that notice has to be clear because all the due process thing is you can't give murky notice. It's got to be clear. And that's a bit of the problem here. And then you say, well, you know, this was a 12B6. But the Supreme Court stressed over and over again that qualified immunity is a right not to be sued. And you've lost it if you drag somebody through all the different stages of litigation with all the time commitment and the cost and everything else. So if you look at immunity as a right to be sued, rather than just maybe a right to prevail somewhere deep along the line, and I think that's, I'm just trying to take into account what the Supreme Court has said because I kind of feel like we're a subordinate court at the end of the day and try to follow what they're telling us. Yes, the Supreme Court has recently reinvigorated qualified immunity. As I stated in City of Tahlequah 2021 case, in Rivas-Villegas, a US 2021 case from the Supreme Court, the court has stated that this inquiry must be undertaken in the light of the specific context of the case. Counsel, can I ask a question? You were talking about the Soledal case, and Soledal has a concept that's interesting to me at least, and I think there the state law required a judicial order. And so the whole process was, as the court described it, knowingly in violation of state law. And I think you probably have an argument that it's not so clear here as to whether the conduct infringed upon the North Carolina statute. But my question is, does, it seems odd to look at a North Carolina statute as somehow providing notice of a constitutional violation. But Soledal almost suggests we do. Do you have a position as to whether we should even look at the North Carolina statute for notice about a constitutional violation? My answer to that question is, the plaintiff has improperly focused on whether the breach of the peace statute has been violated. Regardless of whether there's a violation of the North Carolina statute, the question before the court is not whether there was a knowing violation of North Carolina law. It was whether the Deputy Godfrey's intervention in a breach of the peace was violated the constitutional rights of the plaintiff. But didn't the Supreme Court look at that in Soledal and say whether the creditor's rights actions there knowingly violated state law was one of the factors they looked at? It was one of the factors that they looked at. However, they looked at the wider picture of the amount of involvement where you had the officers there at the beginning to the end of the scene. They had full knowledge of this repossession action to them in the mobile home park. Here, there was no such notice. There was no such active involvement. Can I just clarify, are you contesting that kind of put aside state action? Are you contesting that this was an unlawful repossession? I thought you were just contesting state action, that you were accepting for this appeal that if there was state action, the officer knew there was a breach of the peace, so he knew it was in violation of North Carolina law, knew it was an unlawful repo. We would have to admit to that for purposes of this appeal. Of course, we admit that. However, even if there was a knowing breach of the peace, his mere de minimis involvement in arriving at the scene and saying, get out of the car, by no means was clearly established by precedent that would give him fair notice. As Judge Wilkinson stated, even at the 12B6 stage, where you're based on the pleadings, you must specifically, plausibly allege state involvement. It is a sine qua non prerequisite to Section 1983. Qualified immunity is meant to defend public officers from the burdens of litigation, including discovery. We would have to go through the entire discovery process, potentially summary judgment, and then a trial when, at the pleading stage, qualified immunity can properly protect Deputy Godfrey's rights. And that is the reason for the direct appeal in this matter, and that's the reason that the Supreme Court has allowed qualified immunity to stand at the 12B6 stage. There are probably two questions here. Number one is, if it's a, is there state action? And number two, even if you say there is state action, and this may be what you've touched on, there still has to be an unreasonable search and seizure. It doesn't, it's not, you can't go from, oh, is there state action to a violation. There would still have to be an unreasonable application of state, according to the wording of the Fourth Amendment. Yes, exactly. The wording of the Fourth Amendment requires an unreasonable seizure, and the qualified immunity analysis specifically focused on the constitutionality of the action, not whether it was a violation of state law. This, this court. Hold on a minute, I'm going to, your time has expired. Is there direction to do further questions? I don't know. We have no further questions. Thank you. You've saved some time for rebuttal, so we'd like to hear from opposing counsel. May it please the court. My name is Russell Thompson, and I represent Leslie Atkinson. The main issue on this appeal, as stated by Mr. Castro, is whether the district court properly denied Officer Godfrey's motion to dismiss, finding that he was not entitled to the qualified immunity as a matter of law at this stage of the proceedings. As discussed in Ms. Atkinson's opening brief, Godfrey is not entitled to qualified immunity. The district court properly denied the defendant's motion to dismiss, and this court should affirm. Qualified immunity applies to government officials only to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person, meaning the officer in this situation, would have known. As the official asserting the defense, Deputy Godfrey bears the burden of proof. To succeed on appeal, he must prove that he either did not violate Ms. Atkinson's constitutional right or that the rights were not clearly established. But here, Deputy Godfrey's intervention and assistance in the repossession violated Ms. Atkinson's clearly established Fourth and Fourteenth Amendment rights by facilitating the unlawful seizure of her vehicle in violation of 42 U.S.C. section 1983. To state a section 1983 claim, a plaintiff need only allege two things. One, that she was deprived of a federal right, and two, it was done by a person acting under color of law. As the Western District of Virginia aptly held in Gord v. Crown Auto, when an on-duty police officer actively participates in a creditor's repossession, the officers are participating in the removal. One of the things that troubles me is we have made clear time and time again that the question of clearly established and notice, the state actor assuming argument of the state act, is not required to travel all over the legal landscape in order to establish notice. Because if you put that kind of burden on somebody, there's always going to be some case out there somewhere that's going to be at least arguably notice or arguably on point. But if you say that notice can be provided by any circuit or any district court anywhere, you increase the burden on the party claiming immunity to take a much more extensive legal inquiry. And you dilute qualified immunity by saying any case, no matter what jurisdiction it comes from, can provide clear notice. Now, in our previous cases, we have said that the clearly established notion has to be predicated on the United States Supreme Court by the Fourth Circuit or by the state Supreme Court. And when I was reading what the district court said, he chiefly relied on this Gord case or good case from the Western District of Virginia. And you may agree with that case or you may disagree with that case, but that is not the step that we want district courts to be taking in determining qualified immunity. We have specifically enumerated the three sources that one must look to to establish what is clearly established and finding another district court from a different district and a different state as the chief reliance for clearly established and then the district court says, well, I realize there's no Fourth Circuit case on point, etc. But it's important that the methodology here be kept straight. And if we if we said, oh, yeah, that's fine. You can look to any district court in the circuit for clearly established. You know, once again, we've tried it. You know, we find litigants trying to chip away and dilute the whole notion of qualified immunity in any way that they can, any way that they can. And so it's the methodology that troubles me in terms of outplacing an imprimatur on another district court in another district, another state. When we said, no, that's not where you go. Well, we would take the position here that the law is clear, that this isn't a disputed question of fact that is so specific that we need to look to binding Supreme Court authority or a binding Fourth Circuit opinion on the subject. As the Fourth Circuit said in SP versus City of Tacoma Park, qualified immunity applies to the extent their conduct doesn't violate clearly established statutory constitutional rights of which a reasonable person would have known. So I believe what the district court was doing in referencing the Gord opinion was merely referencing. But don't we have the, I mean, I think it might be fair. You know, I mean, it seems like the best you could argue without a Fourth Circuit case and I guess with Soledal is to say Soledal and the other circuits, you know, say that it's a constitutional or state action if an officer goes past the line of keeping the peace and aids in the repossession. That general concept may or may not be enough. But assuming it is, doesn't qualified immunity require more than that? I mean, the law says that qualified immunity is there to protect all but the most incompetent of state actors. And when you don't have the line delineated as to where you have aid on the one hand and keeping the peace on the other, how do we have it here? How do we have that sort of notice? Not whether generally you can't go beyond breaching the peace but what sort of conduct is going past that? That's what I don't see to be clearly established. What goes by that is aid that, as I think was discussed earlier, that if that assistance, that aid and intervention by the officer without that caused the wrongful deprivation of rights, then that officer has overstepped their grounds. Now the question is whether the officer has gone above and beyond their peacekeeping duties. And I think that's the relevant question here. And I think it's very clear that he went well beyond his peacekeeping duties here, as was admitted during the prior argument, that there was minimal aid. And I think that minimal aid, I think, is more than minimal aid here because here in this situation, Deputy Godfrey arrived on the scene of a disputed repossession. One of the things, and to follow up on Judge Quattlebar's point, in Soledad itself, the court says numerous seizures of this type will survive constitutional scrutiny and that whether a particular action was reasonable will reflect a careful balancing of governmental and private interests. Well, that doesn't provide notice in a situation like this. And to an extent, it doesn't assist you. In fact, by saying it's so fact specific, it leaves it up to the lower courts to provide the specificity, which they haven't done. And the problem with Soledad is it's so different from this situation. To begin with, it's an eviction. There wasn't a tow truck involved. And the officers arrived before the eviction, and their participation was far beyond what Godfrey did when he arrived at the scene. They yanked out, they completely wrenched the sewer and water connections off the side of the trailer home. They disconnected the phone. They tore off the trailer's canopy and skirting, and they hooked the home to a tractor. And the deputies were there on the scene making darn sure that the ripping up this individual's home went without a hitch. But the facts are so different. How could those sorts of facts possibly provide notice of what happened here? It's just a difference. Those cases stand for the proposition that the government can't take property from private citizens without due process, without a right to be heard, and without any judicial oversight whatsoever. The purpose of the Constitution, the Fourth Amendment and the Fourteenth Amendments, is to protect against that. But using that, I mean, the Fourth Amendment says you can't conduct an unreasonable search and seizure. But then we go down to the state law, and that's where we would go to this. We would go to the North Carolina Uniform Commercial Code that expressly says a non-judicial repossession can only happen so long as it can be completed without a breach of the peace. As a law enforcement officer in the state of North Carolina, Deputy Godfrey is charged with knowledge of this law. So he knows at the time of arriving that he's arriving to the scene of a breach of the peace. In fact, he admitted it in his opening brief. Even if he hadn't, on the scene, as alleged in the complaint, it's very clear. It's on Ms. Atkinson's private property, in her backyard, feet away from her back door. She's in the vehicle, so she's in possession of the vehicle. The vehicle is lifted dangerously by its bumper only. I hope that was clear to the court. Defendants play a little soft and loose with the facts on that to imply that it was connected and there could be some sort of mistake of fact over whether who has possession. That is not the case here. The vehicle was lifted dangerously by only its bumper such that they couldn't tow it off. On top of that, here CR, the repossession agent, called the sheriff's office and specifically said this is a private repossession. Ms. Atkinson's in the vehicle. She won't get out of the vehicle. And I've heard that the sheriff's office assists in private repossessions. Can you please send somebody out to remove her from the vehicle? Officer Godfrey then arrived on the scene and did exactly what was asked for. He removed her from the vehicle, which is an action he should not and could not have taken lawfully in that situation. In fact, I would point the court to official comment three to the North Carolina Uniform Commercial Code found at North Carolina General Stat 25-9-609 that says, quote, this section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law enforcement officer. A number of cases have been repossessing. I don't quarrel with you as a general matter. But again, it's always possible to state a constitutional principle as a general principle to which there would be widespread agreement. But Anderson and Creighton and a great many other cases say you've got to go somewhere down the line from general to particular in order to provide notice. And there hasn't been a case that has been brought before us that would provide that kind of notice and the facts and the general case law. I'm sorry, what kind of notice? Could you specify what kind of notice? Counsel, will you stop interrupting? I'm saying there has not been a case. There have been simply statements about the general case law that could go either way. And that portends a very significant dilution of qualified immunity. If you say, well, the general landscape in which there's a conflict out there, there's one case saying this, there's one case saying that. And the existence of a conflict in some other jurisdiction or whatever is enough to provide notice where you shredded the concept of qualified immunity. It's a problem. You see what I'm trying to get at? I get what you're trying to get at, Your Honor. But I think the Constitution is clear. And at a general level, the Constitution is clear that we have a right against self-incrimination. The Constitution is clear that you can't deprive someone of constitutional law, of property without due process of law. Constitution is clear about eminent domain. The Constitution is clear about unreasonable searches and seizures. But all those constitutional principles are phrased at a general level. This person is trying to find, how is he to know that what he was doing was a constitutional violation? Your Honor, because he's a reasonable law enforcement officer, and that's the question under Fourth Circuit precedent is, did his conduct violate clearly established constitutional rights, which a reasonable officer in his situation would have known? A reasonable officer knows a breach of the peace, I can't allow the repossessor to take the vehicle because it's a violation of federal law. A reasonable officer knows the UCC prohibits this repossession company from calling me to a private repossession scene to assist with the repossession, which is exactly what happened. It's expressly prohibited by the Uniform Commercial Code. The comment says a number of cases have held that repossessing secured parties use of law enforcement officer without benefits of judicial process constituted a failure to comply with former sections. So, but counsel, I think, I mean, it seems like you're arguing that it was a clear violation of North Carolina statutory law. Yes, and I would go back to what you referenced earlier in Soledad that knowingly assisting in a violation of state law is a violation of the consumer or the plaintiff's constitutional rights. There's a couple of issues, though. First of all, Soledad prohibited any evictions without judicial notice. So there was no gray area whatsoever. Here, you know, in the state law, there is the concept of, you know, does it go beyond breach of the peace? And do we have that here? You say, yeah, but that may be debatable. Maybe the bigger point, though, is even if it did violate the state law, that's one thing. But our real question is, did it violate the Constitution? And violating the state law and the Constitution are not one and the same. I don't think anyone would say that. So what we're trying to figure out is whether there's either, you know, Supreme Court law. We know there's not four circuit law. We know there's not the highest law in North Carolina. So does the Supreme Court or a consensus of our circuits draw this clear line as to what's breaking the peace and what's aiding? And you haven't argued that as much. And that's, if you can say what cases draw that clear line between, and not, you know, district court cases, how do we get to that? I would say the Second Circuit's opinion in Barrett lays out the timeline of cases. It takes cases across the country, Barrett versus Hardwood, and it lays out that timeline. But the Tenth Circuit in Marcus versus McCollum really sets that bright line rule and is the authority that the case should adopt if it's looking to adopt another circuit's opinion. It was the product of significant legal development. And its opinion stands on the shoulders of other courts of appeal, which balances the needs of officers and the interests of parties. It creates the bright line rule that if the repo is illegal, the officer can't facilitate the repossession that it would not have otherwise happened, which makes sense. It also sets the bright line rule, which is well known, that officers don't have to do anything. It's perfectly reasonable for officers to show up to a scene and say, this is a private civil matter, and not act. That's what the law allows officers to do to stop judicial takings and to maintain a breach of the peace. And that's exactly what the officer should have done here. That way, he doesn't have to guess. He doesn't have to guess who has possession of the vehicle at the time that he arrives. He doesn't have to make a judgment call as to what happened. He can show up, say this is a private issue, as 95%, 98%, 99% of officers do, as I see these cases. Every single day, they come across my desk. Most of the time, the officers say, sorry, this is a civil matter. We can't help. Go handle it elsewhere and see a court. That's what he should have done in this situation. This was on private property. The only thing to do was to say, listen, this is a civil matter. The parties need to disperse. Miss Atkinson was at her home, in her property, in her backyard. There's no need to order her out of there. A reasonable officer knows he doesn't. The only possible reason to notify her to get out of the vehicle is so that the repossession agent can complete the repossession, which is the exact purpose that he called them, pursuant to the policy followed by that sheriff's office. For that reason, we think the court should affirm. Thank you very much, Judge Rushing. Thank you. Thank you. Mr. Castro, you have some rebuttal time, sir. Your Honors, the Appellee's argument heavily relies on constitutional generalities, which the Supreme Court has cautioned against. The Appellee refers to a reasonable officer, a general Fourth Amendment precedent, and what a general reasonable officer in North Carolina would have done. However, you cannot, neither could the District Court point to any clearly established law that would give fair notice to Deputy Godfrey that what he was doing plainly violated the Constitution. As was stated in Ashcroft, the qualified immunity protects all but the plainly incompetent, or those who knowingly violate the law. The plaintiff has not shown any cases, neither could the District Court, that would make Deputy Godfrey's actions, arriving in the middle of a repossession, where a plaintiff was attempting to drive a car off of a tow truck, telling her to get out of the car, was plainly incompetent, or plainly violated the Constitution. The Court must look at precedent involving similar facts in the specific context of the case. That is the language that is the mandate of the Supreme Court. And this Court, in the state of Armstrong, in 2016, it took an approach that can be taken in this case. The Court can either say, look, there's no precedent in the Fourth Circuit or the Supreme Court about what an officer is supposed to do during the midst of a repossession. And I don't think there's any debate that there is no case law on that subject. It can say, therefore, there was no clearly established violation. Even if it does find state action, and even if it does find that Deputy Godfrey violated the Constitution as alleged by the plaintiff, it can do as the Court did in the state of Armstrong, where it said, even though there was a constitutional violation, it was not clearly established. Either way, Deputy Godfrey should be entitled to qualified immunity. Either way, the District Court- It seems to me there are several hurdles. Number one, was there state action? Yes. All right, that's the first case. Number two, was there a constitutional violation? Was there an unreasonable search and seizure? That's the second obstacle. Third obstacle is, even assuming there was state action, even assuming there was a constitutional violation, was the constitutional violation clearly established? Now, the appellant here has to clear all three of those obstacles. Number one, there was state action. Number two, there was an unreasonable search and seizure. Not only state action, but unreasonable state action. And number three, it was in violation of clearly established law. And if you say all three of those things have been cleared, all three of those obstacles have been cleared, that hits a big dent in qualified immunity in the law that the Supreme Court in this circuit has set out. Exactly. There are multiple hurdles- Do you contest that ordering someone to comply with an unlawful private repossession would be an unreasonable seizure? If the officer knew that it was an unlawful possession, then it would be unreasonable for the officer to order contrary action to allow them to comply with an unlawful act. So you don't disagree that it would be an unreasonable seizure for an officer to order someone to comply with an unlawful repossession? I agree that we cannot get to that question unless there is state action. But if, assuming there is state action, assuming there is active involvement in the case enough to implicate the color of law requirement in the first place, then it can be an unreasonable seizure. There cannot be an unreasonable seizure by the mere act of ordering a plaintiff or a party to get out of a vehicle if there is not sufficient state action or active involvement. Right. Which is why you've only contested state action. That is why that is our focus. Because we must, of course, at the pleading stage, we have to accept the allegations as true. And even accepting every allegation in the complaint as true, there is no state action, and there cannot be any, there is no precedent that would give Deputy Godfrey clear notice that he violated the Constitution. That is why it is appropriate, even at the 12B6 stage, to hold plaintiffs to the standard announced in Ashcroft and announced by the Supreme Court, which is to clearly specify the state action and the actions that gave rise to a constitutional violation. The plaintiff cannot rely on generalities about the Fourth Amendment, cannot rely on generalities about a breach of the peace, and neither of the cases cited by the District Court, Soledad or Fuentes, involved a breach of the peace. Neither of them involved an intervention in the midst of a repossession. Neither of them involved anything similar to this, other than a plaintiff or other than an officer being somehow involved with an action where someone's property was taken that is too high of a generality to coincide with the Supreme Court's precedent. The Supreme Court, if you look at the City of Tahlequah case, which I often cite to, it really did a good job of analyzing the specific facts in the case. It compared and contrasted these specific facts in the case that was cited by the lower court to justify the imposition of liability on the deputy. Here, the court did not specify or contrast the Supreme Court cases. It relied on a non-binding District Court decision and it did not cite any similar precedent from surrounding jurisdictions on this issue. For those reasons, we believe this court finding any of these problems has not been established. State action, unreasonableness, or clearly established violation should reverse the decision of the District Court in favor of the defendants. Thank you very much. I wish to thank both of you for your arguments. I'd like to come down and shake hands, but my doctors told me with all these viruses flying around, I'm supposed to thank you from the bench. But I do appreciate both of you. You want to go down and shake hands? Go ahead.
judges: J. Harvie Wilkinson III, A. Marvin Quattlebaum Jr., Allison J. Rushing